786 F.2d 688
 4 Fed.R.Serv.3d 643
 Ronal D. HALE, Individually and on behalf of all persons
similarly situated, Plaintiff-Appellant,
v.
Honorable Naomi HARNEY, Individually and as Judge of the
251st District Court, Randall County, Texas, et
al., Defendants-Appellees.
 No. 85-1472
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 April 7, 1986.
 James J. Leonard, Jr., Dallas, Tex., for plaintiff-appellant.
 Joseph Paul McGuffey, Amarillo, Tex., for Judith Prescott Hale.
 Gibson, Ochsner & Adkins, Wayne P. Sturdivant, Amarillo, Tex., for Naomi Harney.
 Stokes & Fields, Thomas D. Farris, Amarillo, Tex., for Jim B. Brown.
 Jerry L. Benedict, Asst. Atty. Gen., Austin, Tex., for Judge Naomi Harney.
 Appeal from the United States District Court for the Northern District of Texas.
 Before GEE, RANDALL and DAVIS, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 This misbegotten attempt at a civil rights action has its origins in a state court decree, one that granted a divorce on grounds of cruel treatment, the bulk of the marital property, and custody of the parties' three children--with substantial child support--to the wife of appellant Ronal D. Hale. While his appeal of these awards was pending, Dr. Hale, a physician, filed his complaint in federal court against his former wife, her lawyer, and the state judge who rendered the decree. Except for vague allegations of conspiracy to deprive Dr. Hale of constitutional rights, its sole factual allegations are:
 
 
 2
 (A) Defendant HARNEY presided over the divorce litigation which is the subject of this complaint. Defendant HARNEY is biased and prejudiced against males as a class, and plaintiff HALE in particular. Defendant HARNEY openly discussed the litigation while it was pending at cocktail parties and functions in a way which did not promote public confidence in the integrity of the judiciary and demonstrated her hostility towards plaintiff HALE as an individual and as a member of the class of males which he now represents.
 
 
 3
 (B) Defendant BROWN and HALE did conspire with each other and with defendant HARNEY, both tacitly and overtly, to deny plaintiff a fair trial, by intimidation of one of plaintiff's witnesses, and to exploit the well-known bias and prejudice of defendant HARNEY against plaintiff, all of which worked to deny plaintiff of his property without due process of law and furthered the destruction of his parent-child relationship with his three minor children.
 
 
 4
 (C) Plaintiff was further intimidated by defendant HARNEY from exercising his right to a jury trial in the matter of child custody and other issues properly presented to a jury under Texas law.[1]
 
 
 5
 On motion of the defendants, the trial court dismissed the action, assessing sanctions under Rule 11 against Dr. Hale's attorney. Rule 11, Fed.R.Civ.P., provides, in pertinent part:
 
 
 6
 Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction.
 
 
 7
 Undaunted, Dr. Hale appeals on the merits, his attorney from the sanction imposed on him. Both appeals being frivolous, we affirm and impose further sanctions.
 
 THE MERITS
 
 8
 Dr. Hale's action against the state judge, Ms. Harney, is palpably frivolous. It is hornbook law, settled in our jurisprudence for over a century, that such a judge as she enjoys an absolute immunity from liability for damages for judicial acts performed within her jurisdiction. Randall v. Brigham, 74 U.S. (7 Wall.) 523, 19 L.Ed. 285 (1869). Dr. Hale's complaint does not so much as allege that Judge Harney's decree from which his claims of injury derive was beyond her jurisdiction. As to her, it was properly dismissed. See Turner v. Raynes, 611 F.2d 92 (5th Cir.1980), and authorities collected at 94-95.
 
 
 9
 Dr. Hale claims that Mr. Brown and the former Mrs. Hale conspired with Judge Harney to intimidate a witness. Private acts or conduct may engender liability under 42 U.S.C.A. Sec. 1983 if the individual is a willing participant in joint action with the state or its agents. Earnest v. Lowentritt, 690 F.2d 1198 (5th Cir.1982); Dennis v. Sparks, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). The complaint here, however, fails to state any factual basis to support the conspiracy charge. Nowhere does Dr. Hale allege facts tending to show that Judge Harney agreed with the private conspirators. Sooner Products Co. v. McBride, 708 F.2d 510, 512 (10th Cir.1983). In Sec. 1983 cases, "we consistently require the claimant to state specific facts, not merely conclusory allegations." Morrison v. City of Baton Rouge, 761 F.2d 242, 244 (5th Cir.1985) (quoting Elliot v. Perez, 751 F.2d 1472, 1479 (5th Cir.1985)). "Mere conclusory allegations of conspiracy cannot, absent reference to material facts," state a substantial claim of federal conspiracy under 42 U.S.C.A. Sec. 1983. Arsenaux v. Roberts, 726 F.2d 1022, 1024 (5th Cir.1982). Moreover, as in Arsenaux, Dr. Hale chose to file nothing in response to two requests for a more definitive statement of the conspiracy. Record Vol. 1 at 37-39, 241-44. Thus, "[h]e elected to rely on an insufficient charge." Arsenaux, 726 F.2d at 1024.
 
 
 10
 A review of the complaint reveals that the suit is inextricably intertwined with the state court Decree of Divorce, and that much of the relief sought by Dr. Hale is a modification of that decree. A lengthy line of decisions in our court, commencing with Sawyer v. Overton, 595 F.2d 252 (1979) and Kimball v. The Florida Bar, 632 F.2d 1283 (1980), holds that litigants may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits. Nor is the principle stated limited to actions, such as Sawyer, supra, which candidly seek review of the state court decree; it extends to others in which "the constitutional claims presented [in federal court] are inextricably intertwined with the state court's" grant or denial of relief. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 n. 16, 103 S.Ct. 1303, 1314-15 n. 16, 75 L.Ed.2d 206 (1983). In such a case, "the District Court is in essence being called upon to review the state court decision. This the District Court may not do." Ibid. Judicial errors committed in state courts are for correction in the state court systems, at the head of which stands the United States Supreme Court; such errors are no business of ours.
 
 
 11
 In today's case, Dr. Hale complained of the trial court (or its decree) as follows:
 
 
 12
 (D) Further, plaintiff was ordered to pay temporary support and maintenance in a manner which deprived him of due process and equal protection of the law as follows:
 
 
 13
 (1) It required him to earn income in the same quantity as was earned prior to his becoming respondent in a divorce action which had torn apart the fabric of his life and work routine prior to that filing;
 
 
 14
 (2) It did not take account of the debilitating effects of the divorce action which made it impossible for him to work with the same concentration and vigor as he had previously;
 
 
 15
 (3) It did not allow him the opportunity to set his own priorities for time, energy, and concentration he wished to divide and allocate between: earning a living, building upon and/or maintaining and nurturing a relationship with his minor children, and preparing his responses to the divorce action;
 
 
 16
 (4) It did not allow him to attempt to correct problems he might recognize in his parent-child relationship, and which could be brought to his attention by the circumstances surrounding the divorce action, because it did not allow him the liberty to set the above mentioned priorities for fear of imprisonment for failure to pay child support which was set impossibly high;
 
 
 17
 (5) It threatened him with punishment which would be cruel and unusual in that it would punish him for choosing to exercise the same liberties in a way which could mean less money but more personal time devoted to the support of his children;
 
 
 18
 (6) It did not take account of the pressures caused by the divorce on plaintiff's business, which pressures had resulted in changes in his debt structure and monthly obligations;
 
 
 19
 (7) It ordered him to make support payments without regard for the fact that plaintiff's business was undergoing a serious reversal of fortunes;
 
 
 20
 (8) It was ordered as punishment against plaintiff without regard for what was actually necessary to support his children and placed plaintiff in a constant threat of imprisonment which he suffers with to date.
 
 
 21
 Insofar as these complaints about the state court or that court's decree are legally cognizable and do not represent mere grumbling, they are properly addressed to the state appellate courts, not to us. We hold no warrant to review even final judgments of state courts, let alone those which may never take final effect because they remain subject to revision in the state appellate system. Constitutional questions such as these are, to employ the Supreme Court's phrase in Feldman, "inextricably intertwined" with questions of the validity of the state court's decree, questions reviewable in the state system; and the district court correctly dismissed the complaint containing them as beyond its jurisdiction.SANCTIONS BELOW
 
 
 22
 The day is past when our notice pleading practice--circumscribed only by a requirement of subjective good faith on the pleader's part--plus liberal discovery rules invited the federal practitioner to file suit first and find out later whether he had a case or not. We have observed that, before 1983, Rule 11 required merely a subjective, good faith belief that there was good ground to support a pleading. Davis v. Veslan Enterprises, 765 F.2d 494, 497 n. 4 (5th Cir.1985). In such circumstances, unless the pleading was preposterous on its face, the less the pleader inquired, the safer he was from sanction.
 
 
 23
 Although counsel for Dr. Hale insists that subjective good faith remains the relevant standard, the 1983 amendments to the rule added a requirement that the pleader's belief be one "formed after reasonable inquiry" that the pleading is both well grounded in fact and warranted by existent law or reasonably foreseeable legal developments. Veslan Enterprises, 765 F.2d at 497. These amendments had been in effect for two years when Dr. Hale's pleading was presented to the district court. The record does not reflect any reasonable inquiry into the facts surrounding the conclusory conspiracy allegation. Counsel for Dr. Hale did not claim to the district court that he had made a "reasonable inquiry;" indeed, counsel filed no response at all to the motions for Rule 11 sanctions. Even on appeal he does not maintain that a "reasonable inquiry" into the conspiracy facts was made, but instead invokes a subjective good faith standard. Moreover, a "reasonable inquiry" could not have led counsel to believe the other allegations of the pleading to be well-grounded in law, asserting as they do a cause of action against the state judge which had been legally hopeless for over one hundred years and one against the other defendants that had been so at least since the Supreme Court's 1983 decision in Feldman. The authorities that so declare are Supreme Court ones, not obscure pronouncements done in a corner; slight research would have discovered them. The district court properly sanctioned counsel for violating Rule 11.
 
 SANCTIONS TODAY
 
 24
 Despite the application of Rule 11 sanctions below, counsel has filed and presented the instant appeal. What we have already said demonstrates that it as groundless and frivolous as was the original complaint from which it stems. Appellees have moved for sanctions against appellant pursuant to Rule 38, Federal Rules of Appellate Procedure. We grant these motions, award double costs and attorneys' fees against appellant and, because in bringing this appeal appellant's counsel has unreasonably and vexatiously multiplied the proceedings in this case, against appellant's counsel as well. 28 U.S.C. Sec. 1927. We remand to the district court for a determination of the amounts and of the appropriate apportionment of them between Dr. Hale and his counsel. Hagerty v. Succession of Clement, 749 F.2d 217 (5th Cir.1984).
 
 
 25
 Neither we nor the trial courts sit to serve as implements of financial torture and delay, to be applied to hapless parties at the pleasure of counsel. The judgment of the trial court is AFFIRMED and the cause is REMANDED.
 
 
 
 [1]
 The last allegation is a curious one, in view of the facts that Dr. Hale had a jury trial and that the child support of which he complains was set by the jury's verdict